IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERRI L. BARGER,

     Plaintiff,

v.                                  No. 13-1311

JACKSON, TENNESSEE HOSPITAL
COMPANY, LLC, d/b/a REGIONAL
HOSPITAL OF JACKSON,

     Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff, Terri L. Barger, brought this action against Jackson, Tennessee Hospital Company, LLC, doing business as Regional Hospital of Jackson ("Regional"), on November 21, 2013, alleging violations of the Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601, *et seq.* (D.E. 1.) Before the Court is Regional's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 23.) Plaintiff has responded to the motion, (D.E. 32), and Defendant has filed a reply, (D.E. 39), making the matter ripe for disposition. For the reasons discussed below, the motion is DENIED.

## I.    *Background*

The following facts are undisputed unless otherwise noted. In October 2010, Regional hired Barger as a registered nurse in its intensive care unit. She normally worked the night shift on Thursdays, Fridays, Saturdays, and Sundays, from 7:00 PM each evening until 7:00 AM the next morning. On November 5, 2012, Dr. Peter McLemore, DDS, examined Barger and recommended, among other things, that she have a wisdom tooth removed. According to Dr.

McLemore, the need for that procedure did not present an emergency. On December 3, 2012, due to the number of days Plaintiff missed work, her supervisor, Lisa Wall, gave her a written warning stating that additional absences could result in termination. Dr. McLemore's office eventually notified Plaintiff that an appointment was available to have him remove her tooth at 9:50 AM on Thursday, January 3, 2013, and she scheduled the procedure for that time. Barger had prior tooth extractions and experienced no complications or adverse reactions, and she notified Wall of the procedure the day before it was to take place.

On January 3, 2013, Barger drove alone to Dr. McLemore's office. Before the extraction, she signed a consent form that outlined certain complications that could occur, including drowsiness and reduced mental and motor capacity.[1] During her procedure, the roots of the tooth fractured. After the removal, the dentist gave Plaintiff a prescription for Lortab, a pain medication; told her she would not be able to go to work because of pain and bleeding; and provided her with a note excusing her from work for the rest of the day. Barger then drove to get her prescription filled. While waiting, she called Wall to tell her that she could not come to the hospital for her shift because of the procedure and that she had a work excuse from Dr. McLemore.

The next day, January 4, Plaintiff spoke with Wall and told her that she was experiencing continued bleeding and would not be able to come to work.[2] Wall let Barger know that if she

---

[1] Although Plaintiff claims to dispute Defendant's contentions about the consent form "because . . . Barger has demonstrated that she had no reason to believe that she would not be able to work approximately eight hours after the procedure," she also inconsistently states that they are "undisputed, but incomplete." (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 18, D.E. 33). Nothing in her response indicates that Barger did not sign the document or raises any issues as to its content. To the extent that she argues that the document did not directly address her ability to work after the procedure, however, Plaintiff is correct.

[2] Although Barger disputes that this conversation took place, she relies on the testimony of Jimmy Carter, who testified that he was "not for sure" whether she placed or received any phone calls on January 4. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 27, D.E. 33; Carter Dep. 30; D.E. 34-3.) Because this does not contradict

needed to call in sick the next day, she should call the house supervisor because Wall would not be at the hospital. By the time her shift started on January 5, Plaintiff had not reported for work, and she had not contacted the house supervisor to request a sick day. That night, hospital employees spoke with Barger on the phone and informed Wall that Plaintiff was at home, was slurring her speech, and was difficult to understand. At some point, hospital employees arranged for law enforcement to check on her, and the officers reached similar conclusions, including that "she was pretty out of it." (Wall Dep. 32; D.E. 24-2.)

On Sunday, January 6, J. Darrell Green,[3] a friend of Barger's, spoke with Wall and let her know that Plaintiff was operating at a reduced capacity.[4] Plaintiff did not report for her shift that evening. The next day, January 7, she woke up, called Wall, and arranged to meet her that morning. During the meeting, Barger put Wall in contact with Dr. McLemore, who told Wall about Plaintiff's procedure and that she would have needed to take off work. Barger also gave Wall the note excusing her from work on January 3.

Wall and the hospital's director of human resources met with Plaintiff on January 9 and terminated her employment. They discharged her "for scheduling an elective, non-emergency procedure on a day that Plaintiff was scheduled to work . . . , which led to [her] exceeding the number of absences allowed by the [h]ospital in a 12-month period," after having received a warning "that another absence could result in her termination . . . ." (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 37, D.E. 33.) They also cited her "no call/no show on Saturday,

---

Wall's testimony that Plaintiff called her, it does not create a dispute of fact. *See E.E.O.C. v. New Breed Logistics*, No. 10-2696, 2013 WL 1181471, at *7 n.15 (W.D. Tenn. Mar. 22, 2013).

[3] Various documents refer to Green as "Darrell Green," but the Court treats the spelling established in his declaration as definitive. (*See* Green Decl. ¶ 1, D.E. 34-4.)

[4] The exact content of this conversation is disputed. (*See* Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶¶ 32–33, D.E. 33.) Wall claimed that Green said that "he thought maybe [Plaintiff] had just taken some medicine and not eaten" and that he was "going to give her something to eat and see if it would perk her up." (Wall Dep. 34; D.E. 24-2.) Green states that he informed Wall that Barger "was basically incoherent and incapable of doing anything." (Green Decl. ¶¶ 6–7, D.E. 34-4.)

January 5, 2013," as a reason for the decision. (*Id.*) The FMLA was not discussed during the meeting. At some point, Barger contacted Dr. McLemore's office and requested another work excuse, and the office issued it. The note stated that Plaintiff was required to be off work from January 3 until January 7, and Green faxed the note to the hospital for Barger on January 14.[5]

## II.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is

---

[5] There is some uncertainty about when the dentist's office issued this work excuse. Plaintiff testified that she could not remember whether she contacted Dr. McLemore's office before or after her termination, and she stated that the note was issued the same day that she called. (Pl. Dep. 77–78, D.E. 24-1.) Likewise, Green retrieved the note from McLemore's office and faxed it to the hospital the same day he picked it up, January 14. (*Id.* at 79; Green Decl. ¶¶ 8–9, D.E. 34-4; Pl. Dep. Ex. 3, D.E. 24-1.) While this might suggest, by extension, that both the call and the fax took place on January 14, nothing in the record establishes that Green picked the note up on the same day the office issued it. For clarity's sake, the Court will refer to this as the "January 14 note."

properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23; *see In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating and Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

### III.   Analysis

### A.    FMLA Actions in General

The FMLA grants qualifying employees the right "to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons" and to "be restored to the same or an equivalent position upon returning to work." *Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir. 2003) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). It also "creates a private right of action entitling eligible employees to seek both equitable relief and money damages against any employer" who violates their rights under the statute. *Id.* (citations omitted) (internal quotation marks omitted). Two separate theories of FLMA liability exist: the "interference" or "entitlement" theory and the "retaliation" or "discrimination" theory. *Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 488–89 (6th Cir. 2012); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d

274, 282 (6th Cir. 2012). Employees may raise retaliatory discharge claims under either theory, but "the requisite proofs differ." *Seeger*, 681 F.3d at 282.

## B.    FMLA Interference

The basis for an interference claim is found in 29 U.S.C. § 2615(a)(1), which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *See also Seeger*, 681 F.3d at 282. To "establish a prima facie case of FMLA interference," a plaintiff must "show[] five elements: (1) she was an eligible employee, (2) the defendant was a covered employer under the FMLA, (3) she was entitled to leave, (4) she gave notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled." *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 487 (6th Cir. 2013) (citing *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir. 2005)). Regional concedes that it was a covered employer and that Barger was an eligible employee during the relevant period, so the first two elements are not at issue. (D.E. 24 at 7 n.1.)

### 1.    *Barger's Entitlement to FMLA Leave*

Defendant argues that Plaintiff was not entitled to FMLA leave because she did not suffer from a "serious health condition." (*See* D.E. 24 at 8–13.) It contends that the initial tooth extraction constituted "routine dental care," which does not qualify as a serious health condition for FMLA purposes. (*Id.* at 9–11.) The hospital also maintains that Barger was not sufficiently incapacitated after the procedure to have experienced a serious health condition. (*Id.* at 11–13.)

To establish a FMLA interference claim, a plaintiff must show that she suffered from a "serious health condition." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir.

2014) (citing *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 337 (6th Cir. 2009)). Whether an illness qualifies as a serious health condition is a legal issue for the Court to decide. *Perk v. Nyrstar Clarksville, Inc.*, No. 3:12-0913, 2014 WL 1379170, at *3 (M.D. Tenn. Apr. 8, 2014) (citing *Taylor v. Autozoners, LLC*, 706 F. Supp. 2d 843, 849 (W.D. Tenn. 2010)). A plaintiff cannot overcome summary judgment on this ground by merely alleging her ailment to be such a condition. *Id.*

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Neither party contends that Plaintiff was under inpatient care related to the procedure, so she can meet the definition only if she was under continuing treatment. The Department of Labor has issued a regulation containing guidance on what constitutes a serious health condition under § 2611(11)(B), which in relevant part provides:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a)    Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (1)    Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> >
> > (2)    Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
> >
> > (3)    The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health

care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

(4)     Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30–day period shall be determined by the health care provider.

(5)     The term extenuating circumstances in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30–day period, but the health care provider does not have any available appointments during that time period.

29 C.F.R. § 825.115(a). Barger contends that she experienced a serious medical condition under this provision. (*See* D.E. 32; D.E. 34.)

Regional makes three arguments as to why Plaintiff cannot show that she suffered a serious medical condition. First, it claims that the tooth extraction was a "routine dental . . . problem[]" without complications that did not, in itself, qualify as a serious medical condition. (D.E. 24 at 9–11.) Second, it contends that § 825.115(a) "requir[es] four consecutive, full calendar days of incapacity" for an illness to rise to the level of a serious health condition, and Barger was incapacitated for, at most, three full days and one partial day. (*Id.* at 12–13.) Third, it avers that Dr. McLemore's January 14 note was insufficient to support a serious medical condition because it was not based on a "meaningful professional assessment." (D.E. 39 at 6–7.)

a.     Routine Dental Care

The Department of Labor's FMLA regulations state that, "[o]rdinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are

examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d). Dr. McLemore stated under oath that the extraction "went well" and that Plaintiff's tooth fracturing during the procedure should not be considered a "complication" because it happens "really frequently." (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶¶ 19–20, D.E. 33; McLemore Dep. 30–31, D.E. 24-3.) Regional cites several cases in support of its claim that "a tooth extraction is a routine dental procedure, even when it requires missing multiple days of work thereafter." (D.E. 24 at 10.) On close reading, however, none of these cases used this rationale as an *independent* basis to conclude that a serious health condition did not exist. Rather, they reached their result only after ruling out a period of incapacity exceeding three consecutive, full calendar days under § 825.115(a), or under circumstances where this provision plainly did not apply. *See Brooks v. Via Christi Reg'l Med. Ctr., Inc.*, No. 08-1376-JTM, 2010 WL 446523, at *10 (D. Kan. Feb. 4, 2010) ("[T]he plaintiff has provided only her own subjective assessment that she was incapacitated from working in the wake of the tooth extraction, coupled with [her dentist]'s subsequent statement that she thinks it was not unreasonable for Brooks to stay off work."); *Hastings v. Carlson Mktg. Grp., Inc.*, No. 04-3370 (DWF/JSM), 2005 WL 2837391, at *6 (D. Minn. Oct. 27, 2005) ("Here, Hastings was not incapacitated for more than three consecutive days . . . . Thus, summary judgment in favor of Carlson is appropriate."); *Ducharme v. Cape Indus., Inc.*, No. 01-74503, 2002 WL 31545980, at *2 (E.D. Mich. Oct. 8, 2002) (noting that, according to a "letter from [the plaintiff's dentist], there is . . . nothing to indicate Plaintiff's incapacity or inability to perform his job"); *Brown v. Seven Seventeen HB Philadelphia Corp. No. 2*, No. 01-1741, 2002 WL 31421924, at *5 (E.D. Pa. Aug. 8, 2002) ("Because Plaintiff has failed to come forth with any evidence that [her dentist] or any other health care provider considered [her] unable to work for a period of more

than three days, [she] cannot meet the standard set by the FMLA."); *Flanagan v. Keller Products, Inc.*, No. CIV. NO. 00-542-M, 2002 WL 313138, at *7 (D.N.H. Feb. 25, 2002) ("Flanagan's 'condition' . . . never caused her to miss consecutive days of work. . . . Nor is there any evidence that her dental condition limited her daily activities . . . or interfered with her ability to maintain an active social life."); *Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 975 (N.D. Ohio 1998) ("Even if the regulations specifically did not exempt Bond's routine dental problems . . . from FMLA coverage, the Court finds [that he] also would not be covered under the [FMLA] because [he was] not incapacitated for more than three days."), *aff'd in part*, 188 F.3d 506 (6th Cir. 1999).

The text of the regulations, read together, does not support Regional's position either. The provisions explain that routine dental problems will not "[*o*]*rdinarily*" rise to the level of serious medical conditions unless complications occur. 29 C.F.R. § 825.113(d) (emphasis added). Further, they explicitly state that "*any* one or more" of § 825.115's categories will constitute a serious medical condition if met. *Id.* § 825.115 (emphasis added). Properly understood, the discussion of routine dental problems does not act as a limit on proving a serious medical condition by showing more than three consecutive, full days of incapacity. Although the Sixth Circuit does not appear to have addressed this question, this interpretation is supported by other circuit court decisions, and it comports with the Department of Labor's own understanding of the FMLA. *See Rankin v. Seagate Technologies, Inc.*, 246 F.3d 1145, 1147 (8th Cir. 2001) ("We have previously observed that although conditions like the common cold or the flu will not routinely satisfy the requirements of a 'serious health condition,' absences resulting from such illnesses are protected under FMLA when the regulatory tests are met." (citing *Thorson v. Gemini, Inc.*, 205 F.3d 370, 379 (8th Cir. 2000))); WHD Op. FMLA-86 (Dec. 12, 1996) (The

FMLA regulations also provide examples, in section 825.11[3(d)], of conditions that **ordinarily**, unless complications arise, would not meet the regulatory definition of a serious health condition and would not, therefore, qualify for FMLA leave: the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc. . . . . If, however, any of these conditions met the regulatory criteria for a serious health condition, e.g., an incapacity of more than three consecutive calendar days that also involves qualifying treatment, then the absence would be protected by the FMLA." (emphasis in original)). Therefore, if Plaintiff can establish incapacity under § 825.115(a), she may have a valid claim under the FMLA, despite the fact that the extraction did not give rise to any complications.

b.      Four Consecutive, Full Calendar Days

Regional maintains that § 825.115(a)'s requirement of "[a] period of incapacity of more than three consecutive, full calendar days" means, at a minimum, "four consecutive, full calendar days of incapacity . . . ." (D.E. 24 at 12.) According to Defendant, "[a]ssuming *arguendo* that Plaintiff was incapacitated on Friday, January 4, Saturday, January 5, and Sunday, January 6, 2013, [she] cannot show that she was incapacitated for a full day on Thursday, January, 3, 2013[,] so as to meet the four-day threshold." (*Id.* at 12.) Because Barger was ostensibly able to work before the procedure on January 3 and again on January 7, the hospital argues, she could not have been incapacitated long enough to qualify for FMLA leave. (*Id.* at 12–13.)

This Court and others in the circuit have stated that "[g]enerally, . . . a plaintiff must come forward with some evidence that a health care provider has instructed, recommended, or at minimum authorized an employee not to work for at least four consecutive days for that employee to be considered incapacitated for the required period of time . . . ." *Autozoners*, 706 F.

Supp. 2d at 850 (quoting *Helmick v. Solid Waste Auth. of Cent. Ohio*, No. 2:07-CV-912, 2009 WL 650417, at *6 (S.D. Ohio Mar. 10, 2009)); *Alston v. Sofa Express, Inc.*, No. 2:06-cv-0491, 2007 WL 3071662, *8 (S.D. Ohio Oct. 19, 2007) (quoting *Bond*, 7 F. Supp. 2d at 974). None of the cases Defendant cites have held, however, that a partial day of incapacity—either before or after the period of three consecutive, full days—will not suffice. *See Combs v. Quest Specialty Coating LLC*, No. 12-10995, 2013 WL 1506523, at *3 (E.D. Mich. Apr. 12, 2013) (analyzing the dates at issue only as "subsequent treatment or incapacity" potentially covered by FMLA, not as a part of a more-than-three-day period of incapacity); *Autozoners*, 706 F. Supp. 2d at 850 (finding that the plaintiff was only unable to work for a two-day period); *Helmick*, 2009 WL 650417, at *6–8 (finding that the plaintiff did not provide any opinion from a medical professional that he could not work during the relevant period); *Fritz v. Phillips Serv. Indus., Inc.*, 555 F. Supp. 2d 820, 823–24, 831–33 (E.D. Mich. 2008) (finding that, although the plaintiff was incapacitated for only two days, his illness could constitute "continuing treatment" for a prior FMLA incident); *Alston*, 2007 WL 3071662, at *9 (finding that the "[p]laintiff was only incapacitated, or unable to work, for two days"); *Bond*, 7 F. Supp. 2d at 974–76 (finding that one plaintiff was only authorized to take two days off from work and that the other was absent for only three days). Although no Sixth Circuit decision appears to be on point, the Eleventh Circuit has directly contradicted Regional's position in dicta. *See Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1343–44 (11th Cir. 2003) ("[I]t takes *some fraction more* than three whole calendar days in a row to constitute the 'period of incapacity' required under § 825.11[5(a)]. . . . Partial days do not count, *except at the beginning or end of the 'period of incapacity'* in order to make up the 'more than' element." (emphasis added)).

The plain meaning of the regulation's text does not support Defendant's interpretation either. As a basic mathematical principle, three-and-a-half is more than three, as are all other fractions in excess of three. Including the word "full" does not change matters. Any amount greater than three but less than four is still more than three *full* units. Moreover, to say that § 825.115(a)'s requirement of a "period of incapacity of more than three consecutive, full calendar days" requires a fourth complete day disregards linguistic conventions related to time. A description of time is, as a matter of usage, generally treated as a singular interval unless the context specifically indicates a collection of discrete units of time. As one commentator has noted, "one isn't, ordinarily, talking about the number of years . . . but rather the amount of time . . . ." Bryan A. Garner, *Garner's Modern American Usage* 507 (3d ed. 2009). This insight applies equally, if not with more force, to days rather than years. The general convention breaks down where "the units of time are thought of as wholes, and not by fractions," *id.*, so it is conceivable that the use of the terms "consecutive," "full," and "calendar" could otherwise modify the phrase "three . . . days" such that it would refer to individual, whole days rather than a length of time. But the text of § 825.115(a) forecloses that possibility. The provision specifically refers to a "*period* . . . of more than three consecutive, full calendar days" and uses a singular verb—"includes"—to accompany it. 29 C.F.R. § 825.115(a) (emphasis added). By its own terms, then, the regulation defines a single interval of time, and the term "full" is given effect by defining the initial three-day period rather than creating a requirement for an additional fourth full day. Had the provision's drafters intended to adopt Regional's proposed meaning, they could have done so by designating the period of incapacity as "at least four consecutive, full calendar days." To satisfy this portion of § 825.115(a), then, a plaintiff need only be incapacitated for some fraction more than three consecutive, full calendar days.

c.      Adequacy of the January 14 Note

Defendant contends that Dr. McLemore's January 14 note is "insufficient to prove a serious health condition that made Plaintiff unable to perform the functions of her job." (D.E. 39 at 6.) As previously discussed, the only issue relating to a serious health condition currently under consideration is whether Plaintiff was incapacitated for a period of more than three consecutive, full calendar days. District courts across the Sixth Circuit have held that "a plaintiff's own testimony, *standing alone*, is insufficient to prove incapacity under the FMLA, and . . . a plaintiff's own assertions regarding the severity of her medical condition are insufficient to establish a serious health condition." *Hyldahl v. Michigan Bell Tel. Co.*, 503 F. App'x 432, 439 & n.3 (6th Cir. 2012) (emphasis in original) (collecting cases). "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor[], or recovery therefrom." 29 C.F.R. § 825.113(b). Additionally,

> [i]ncapacitation for the purposes of . . . FMLA does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work. Rather, it means that a health care provider has determined that, in his or her professional medical judgment, the employee cannot work (or could not have worked) because of the illness.

*Linebarger v. Honda of Am. Mfg., Inc.*, 870 F. Supp. 2d 513, 524 (S.D. Ohio 2012) (quoting *Alston*, 2007 WL 3071662, *8) (internal quotation marks omitted). For purposes of establishing a serious medical condition, such a determination "need not be made at any particular stage of the illness or at any particular point post-injury." *McDonald v. Mt. Perry Foods, Inc.*, No. C2:09-CV-0779, 2011 WL 3321470, at *8 (S.D. Ohio Aug. 2, 2011) (quoting *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 n.11 (N.D. Ohio 1997)). To withstand a motion for summary judgment, however, a plaintiff must "produce[] evidence showing that a health care

provider has made a professional assessment of h[er] condition and determined, at some point in time, based on that assessment, that a leave of absence from work was necessary." *Beyst v. Pinnacle Airlines, Inc.*, No. 07-10927, 2008 WL 2433201, at *10 (E.D. Mich. June 11, 2008) (citing *Olsen*, 979 F. Supp. at 1166).

At the outset, the January 3 note is insufficient because it excuses her from work only for one day, the day of the procedure. (Pl. Dep. Ex. 2, D.E. 24-1.) The January 14 note, on the other hand, may be adequate. As Regional points out, however, Dr. McLemore had not seen Plaintiff in person since January 3 before his office provided the January 14 note; he did not speak with Barger when she called to request it; and he did not personally sign the note. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 41, D.E. 33; Pl. Dep. 77–78, D.E. 24-1; McLemore Dep. 44; D.E. 39-2.) But, for purposes of summary judgment, Defendant does not dispute that Dr. McLemore issued the January 14 note. (Def.'s Resps. to Pl.'s Additional Material Facts ¶ 43, D.E. 40.) Nonetheless, Regional maintains that Dr. McLemore did not meaningfully assess Plaintiff in support of the January 14 note, and the note does not establish a connection between the extraction and any period of incapacity. (D.E. 39 at 6–7.)

The January 14 note reads:

### EXCUSE FOR DENTAL APPOINTMENT

This is to inform you that **Terri Barger** was seen at our office for treatment of dental services on **January 3, 2013**. This procedure required Ms. Barger to be off work until January 7, 2013.

Should additional appointments be necessary, separate excuse slips will be presented to you.

Thank you,

[s/]

Pete McLemore, D.D.S.

(Pl. Dep. Ex. 3, D.E. 24-1) (emphasis in original). Although Dr. McLemore had not seen Barger since the procedure, the record contains evidence that he spoke with her at least two times since then: to discuss her ongoing bleeding on January 4 and, three days later, to discuss her reaction to the medicine he prescribed. (Barger Patient Notes 3, D.E. 27; Pl. Dep. 72, D.E. 24-1.) Although he admitted he did not sign the note, he testified that he "may have given authority" to his office manager to sign for him and that such authorization is given on a "case by case basis." (McLemore Dep. 51, D.E. 24-3.)[6]

The cases Regional relies on do not directly support granting summary judgment. In *Olsen*, the court found that a chiropractor's work excuse was not sufficient because he did not qualify as a health care provider under the FMLA,[7] a point not contended in this case. *Olsen*, 979 F. Supp. at 1166–67. To the extent the opinion called his assessment into doubt, it noted that the chiropractor "apparently guaranteed . . . that he would provide [the plaintiff] a four . . . day work excuse *before* [the chiropractor] even examined [him]" and that the medical records did not disclose any form of treatment. *Id.* at 1167 & n.12. In *Beyst*, the plaintiff failed to provide evidence that any healthcare provider "ever assessed [his] condition as preventing him from working during the time period at issue." *Beyst*, 2008 WL 2433201, at *10. And in *Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995), the court found that a plaintiff's illness did not entitle her to FMLA leave because her doctor "never advised plaintiff to

_____

[6] The Sixth Circuit has affirmed a district court's grant of summary judgment where a certification form was inadequate because the record showed that the physician did not authorize his assistant to complete it. *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 578–79 (6th Cir. 2007). In this case, however, an issue of fact remains as to whether McLemore provided authorization for the January 14 note.

[7] To qualify as a health care provider for FMLA purposes, a chiropractor must have performed a "manual manipulation of the spine to correct a subluxation as demonstrated by [x]–ray to exist." 29 C.F.R. § 825.125(b)(1). In *Olsen*, the undisputed evidence showed that the chiropractor did not perform a spinal manipulation, that he did not take an x-ray before issuing the work excuse, and that a subsequent x-ray did not show any abnormalities. *Olsen*, 979 F. Supp. at 1166–67.

remain off work," could not testify that she "was unable to perform the functions of her job . . . in light of the illness," and only "speculat[ed] that it was reasonable for someone to miss three of four days for her type of illness . . . ."[8] Barger's claim does not suffer from the same sort of defects at this stage. Regional does not dispute that Dr. McLemore provided a note excusing Barger from work for more than three days. (Def.'s Resps. to Pl.'s Additional Material Facts ¶ 43, D.E. 40.) Dr. McLemore's determination was based on at least some familiarity with Plaintiff's condition, because he performed the initial procedure, prescribed medication, and spoke with Plaintiff following the extraction. Also, unlike in *Olsen*, his notes and testimony describe a course of treatment.

As mentioned earlier, several courts around the circuit, including this Court, have held that "a plaintiff must come forward with some evidence that a health care provider has instructed, recommended, *or at minimum authorized* an employee not to work for at least four consecutive days for that employee to be considered incapacitated . . . under the FMLA." *Helmick*, 2009 WL 650417, at *6 (emphasis added) (quoting *Alston*, 2007 WL 3071662, at *8); *see also Autozoners*, 706 F. Supp. 2d at 850; *Bond*, 7 F. Supp. 2d at 974. And it is undisputed, at least for purposes of this motion, that Dr. McLemore provided such authorization. Accordingly, summary judgment on this ground is inappropriate.

### 2.    *Barger's Notice of Her Intent to Take Leave*

Even if Barger suffered from a serious health condition, she must also show that she gave proper notice under the FMLA. "[T]he FMLA places no duty on an employer to grant leave

---

[8] Contrary to Defendant's characterization, the *Brannon* court did *not* grant summary judgment, finding instead that the plaintiff's daughter had a serious health condition for which plaintiff was entitled to take FMLA leave. *Brannon*, 897 F. Supp. at 1037.

without a request or notice from an employee." *Anderson v. McIntosh Const., LLC*, ___ F. App'x. ___, 2015 WL 105979, at *2 (6th Cir. 2015) (citing *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). A plaintiff "must request leave and provide enough information for her employer to know that the FMLA applies to the request" to satisfy this notice requirement. *Id.* (citing *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 723–24 (6th Cir. 2003)). Ultimately, "[t]he employee's burden is not heavy." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014). The employee need not specifically mention the FMLA in an initial leave request, but the employer must have been able "to reasonably conclude that an event described in [29 U.S.C. § 2612(a)(1)(D)] . . . occurred." *Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 555 (6th Cir. 2010) (citations omitted) (internal quotation marks omitted). Described differently, "the critical test for substantively[ ]sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Miles v. Nashville Elec. Serv.*, 525 F. App'x 382, 386 (6th Cir. 2013) (quoting *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004)). "In addition, part of reasonable notice generally includes an indication of 'the anticipated timing and duration of the leave.'" *Wallace*, 764 F.3d at 586 (quoting 29 C.F.R. § 825.302(c)).

Beyond being substantively sufficient, the employee's notice must also be given "within the requisite time frame." *Brenneman*, 366 F.3d at 421. "The time frame depends on the foreseeability of the needed leave." *George v. Russell Stover Candies, Inc.*, 106 F. App'x 946, 949 (6th Cir. 2004). If the need for leave is foreseeable and will begin in at least 30 days, the employee must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . . ." 29 U.S.C. § 2612(e)(2)(B).

Otherwise, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *see also Brenneman*, 366 F.3d at 421. In this case, Defendant does not claim that Plaintiff's leave was foreseeable enough to require 30-days' notice, so notice must have been given as soon as practicable.

The required notice may come from the employee, or it "may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally." 29 C.F.R. § 825.303(a). "Once an employer receives timely notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA." *George*, 106 F. App'x at 950 (citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)). But the employer's duty to inquire further arises only *after* the employee or her spokesperson provides sufficient notice. *Miles*, 525 F. App'x at 386.

The record, taken in the light most favorable to Plaintiff, shows that shortly after the procedure on Thursday, January 3, Barger informed Wall, who knew of the procedure, (Wall Dep. 9–10, D.E. 34-6), that the staff at the dentist's office "got into more than what they thought they would when they were doing [her] tooth and that [she] would not be able to come to work" that evening. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 25, D.E. 33.) She also told Wall that Dr. McLemore issued her a work excuse for that day. (*Id.* ¶¶ 23, 25.) Wall testified that Plaintiff called her the next day, January 4, and said that "[h]er mouth was bleeding every time she stood up"; that "she called her dentist, and he may have to see her"; and that "she could not work" that evening. (Wall Dep. 18; D.E. 24-2.) Wall further stated that, after Barger did not come in for her January 5 shift, she called to check on Plaintiff, who did not answer. (*Id.* at 22–23.) Barger then called the nursing floor, and a hospital employee relayed to Wall that Plaintiff

was at home and had "slurred speech" that was hard to understand. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 24, D.E. 33; Wall Dep. 26–27; D.E. 24-2.) The on-duty nursing supervisor arranged for law enforcement to check on Barger and reported to Wall that the officers found that Plaintiff had slurred speech and was "pretty out of it." (Wall Dep. 31–33; D.E. 24-2.) On Sunday, January 6, Wall received a call from Green, who was with Barger at the time. (*Id.* at 33–34.) He informed Wall that Barger "was basically incoherent and incapable of doing anything." (Green Decl. ¶¶ 6–7, D.E. 34-4.) Throughout the weekend, Plaintiff was "incoherent," "unable to do anything," and "not capable of communicating with anyone . . . ." (*Id.* ¶ 4; *see also* Carter Dep. 9–13, D.E. 34-3.) When she woke up on the morning of Monday, January 7, she did not know what day it was or that she had missed work all weekend. (Pl. Dep. 69, D.E. 24-1.) She immediately called into Regional to speak with Wall and reached her on her cell phone after being told that Wall had not yet arrived at the hospital. (*Id.* at 70.) That morning, Barger met Wall at the hospital to explain her absence and put Wall in contact with Dr. McLemore. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶¶ 34–35, D.E. 33.) He told Wall that Plaintiff had "dental surgery on [January 3] for which she would likely have needed to take time off work post[-]procedure" and expressed that he could not release information about Barger's prescribed medications. (Barger Patient Notes 3, D.E. 27.) Plaintiff also provided Wall with the January 3 note excusing her from one day of work at the meeting. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 36, D.E. 33.) Defendant terminated Barger on January 9. (*Id.* ¶ 37.) Either the day before or sometime after the termination, but on January 14 at the latest, Barger contacted Dr. McLemore's office to get an updated work release. (Pl. Dep. 77–78, D.E. 24-1.) This note excused Plaintiff from work from January 3 until January 7, and it was faxed to Regional on January 14. (*Id.* at 79; Green Decl. ¶¶ 8–9, D.E. 34-4; Pl. Dep. Ex. 3, D.E. 24-1.)

Regional contends that "Plaintiff did not request FMLA leave and did not provide . . . enough information . . . to reasonably conclude that Plaintiff had a serious health condition under the FMLA . . ." (D.E. 23 at 2.) It reasons that the information in the hospital's possession did not provide notice of a serious health condition because it did not indicate that Barger received inpatient care, suffered a chronic condition, suffered a complication in connection with the extraction, or had been "incapacitated for four consecutive, full calendar days." (D.E. 24 at 14–17.) Neither inpatient care nor a chronic condition is at issue, and to the extent Defendant maintains that the FMLA requires four *full* days of consecutive incapacity or that a routine dental procedure can *never* give rise to a serious medical condition without complications, its arguments lack merit for the reasons previously discussed.

The hospital also raises timeliness as a ground for summary judgment. It claims that the January 3 note only excused Barger from one day of work, and the FMLA does "not require the [h]ospital to have a crystal ball and predict the future ([i.e.], foresee the January 14 note) when Plaintiff provided information for the Hospital to reasonably conclude she did not sustain a[] FMLA-qualifying event." (D.E. 39 at 5) (citing *Brenneman*, 366 F.3d at 428; *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998)). This argument conflates the standard for notice and the standard to survive a motion for summary judgment on the issue of a serious health condition. As described in more detail above, a plaintiff relying on a period of incapacity of more than three days to establish a serious health condition must provide evidence from a health care provider to survive a motion for summary judgment. An employee is generally not required, however, to tender a work excuse from a medical provider to effectively notify her

employer under FMLA.[9] Instead, the employee must simply provide, in a timely manner, "enough information for the employer to reasonably conclude that an event described in [29 U.S.C. § 2612(a)(1)] has occurred." *Wallace*, 764 F.3d at 586 (quoting *Cavin*, 346 F.3d at 723–24); *see, e.g.*, *Brannon*, 897 F. Supp. at 1039 (finding that notice was adequate and timely under the FMLA when the employer knew the reason for the employee's absence, and the employee spoke with her supervisor about her absence on the days she missed work and again upon her return). Stated differently, "an employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. . . . After such notice, it is 'the employers' duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement.'" *Maynard v. Total Image Specialists, Inc.*, 478 F. Supp. 2d 993, 1001 (S.D. Ohio 2007) (quoting *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)).

In this case, a genuine issue of material fact exists as to whether Barger provided sufficient, timely notice. Plaintiff has presented evidence showing that Regional was informed of the procedure, and, on four consecutive days, either Plaintiff or someone connected with her told the hospital that she was having issues arising out of the extraction—whether they were excessive bleeding or side effects from her medication—that kept her from working. Further, the evidence suggesting that Barger was operating at a greatly diminished capacity over the weekend and that she immediately contacted her supervisor upon regaining her faculties establishes a genuine issue as to the timeliness of her notice, judged under a practicability standard.

---

[9] Employers have the option under the FMLA to "require . . . a certification issued by the health care provider of the eligible employee," 29 U.S.C. § 2613(a), and "[f]ailure to timely provide a medical certification for which an employer has properly asked will generally preclude an employee's FMLA-interference claim," *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013) (citing *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005)). Nothing in the record shows, however, that Regional ever communicated such a requirement to Barger—or even that it had a certification requirement in place.

Accordingly, even before receiving the January 14 note, Defendant may have had timely notice sufficient for it to reasonably conclude that Plaintiff suffered more than three consecutive, full days of incapacity.

The cases Defendant relies on concern substantially different circumstances. In *Aubuchon*, the plaintiff filled out an employer-mandated certification form citing "patently insufficient grounds" for leave before providing a post-termination doctor's note ostensibly supporting FMLA leave. *Aubuchon*, 359 F.3d at 952–53. In this case, Barger's notice was not patently insufficient, as Defendant alleges, because Regional could have reasonably concluded that she was incapacitated longer than three days. In *Torres v. Inspire Dev. Centers*, No. 13-CV-3062-TOR, 2014 WL 3697816, at *9 (E.D. Wash. July 24, 2014), the "[p]laintiff waited at least a full week to contact [the d]efendant and did not communicate any salient facts [that] would implicate [the] FMLA," stating only that he could not come to work because "he was a little busy." And, in *Henegar v. Daimler-Chrysler Corp.*, 280 F. Supp. 2d 680, 687 (E.D. Mich. 2003), the employee only provided notice to the employer by selecting "ill" as the reason for his absence on the employer's automated phone system and bringing a doctor's note upon his return to work over two weeks later. Barger, on the other hand, contacted Regional multiple times during her leave and communicated the reason for her absence to the hospital.

Although "[c]onditioning the right to take FMLA leave on the employee's giving the required notice to his employer is the quid pro quo for the employer's partial surrender of control over his work force," *Aubuchon*, 359 F.3d at 952–53, the employee's burden in providing notice is not heavy, *Wallace*, 764 F.3d at 586. Because, taken in the light most favorable to Plaintiff, the record shows that she timely supplied the hospital with information that should have alerted it to

the possibility that she qualified for FMLA leave, her claim survives summary judgment on this ground.

### 3. Regional's Discharge of Barger

Even if a plaintiff establishes the elements of a FMLA interference claim, "an employer may defeat liability by showing that the FMLA benefit did not accrue to the plaintiff because the plaintiff was discharged for some other, legitimate reason . . . ." *Wallner v. Hilliard*, 590 F. App'x 546, 550 (6th Cir. 2014) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). To do so, the employer must "prove it had a legitimate reason unrelated to the exercise of FMLA rights for terminating the employee." *Donald*, 667 F.3d at 762 (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). The plaintiff may then "rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination," under the familiar tripartite test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Donald*, 667 F.3d at 762 (citing *Grace*, 521 F.3d at 670). Regional argues that it discharged Plaintiff for reasons independent of the FMLA because she was a no-call, no-show on January 5—grounds for immediate termination under hospital policy—and she scheduled an elective wisdom tooth extraction on a workday after receiving a warning that she would be terminated for further absence. (D.E. 24 at 17–20; D.E. 39 at 7–8.)

Regarding the no-call, no-show, Defendant correctly notes that FMLA regulations oblige an employee to "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c); *see also Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614–15 (6th Cir. 2013) (holding that

identical language in § 825.302(d) abrogated contrary Sixth Circuit precedent). According to the hospital, Plaintiff violated its procedures by failing to call in her absence before the start of her January 5 shift. (D.E. 24 at 18.)

Consulting the full text of the regulations, however, shows that an employee's inability to follow the employer's requirements may qualify as an unusual circumstance. Under the FMLA, "if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). Elsewhere, the regulations state that

> [u]nusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full.

*Id.* § 825.302(d). As one court found, "[t]he FMLA regulations associate 'unusual circumstances' with communication issues such as the employee's inability to reach a supervisor or designated employee" including inability "to request FMLA leave due to physical incapacitation . . . ." *Uselton v. CSX Transp., Inc.*, No. 3:13-CV-00349, 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014). Barger presents evidence showing that she was physically incapacitated on January 5 and, therefore, not able to comply with the hospital's requirement that she phone in before her shift. Green stated in his declaration that she was "incoherent," "unable to do anything," and "not capable of communicating with anyone" at times over the weekend, (Green Decl. ¶ 4, D.E. 34-4), and another person who spent time with her provided similar testimony, (Carter Dep. 9–13, D.E. 34-3). While Plaintiff did contact the hospital after she missed her supervisor's phone call checking on her, she dialed the wrong number in response, and hospital employees said that she sounded like she was operating under diminished capacities. (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶ 30, D.E. 33; Wall Dep. 22–23, 26; D.E.

24-2.) Moreover, the hospital arranged for law enforcement to check on Barger, and the officers reached the same conclusion. (Wall Dep. 31–33; D.E. 24-2.) Plaintiff testified that she did not remember any of the events of the weekend upon waking up on January 7. (Pl. Dep. 51, 67–70, D.E. 24-1.) This information regarding Plaintiff's capacity is sufficient to create a genuine issue as to whether "unusual circumstances" apply to justify her failure to call in before her January 5 shift began.

As to Barger's scheduling of the extraction, Regional does not point to any of its "usual and customary notice and procedural requirements for requesting leave" that she violated, so analysis under § 825.303(c) is inappropriate. Tellingly, Defendant provides only two inapplicable regulatory provisions to support its position that it terminated Plaintiff consistently with the FMLA for planning the procedure on January 3. The hospital cites 29 C.F.R. §§ 825.203 and 825.302(e) for the proposition that the FMLA "require[s] that employees act reasonably in scheduling medical treatment." (D.E. 24 at 19.) Section 825.203 states that "[i]f an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations." By its own terms, the provision only applies to intermittent and reduced schedule leave requests, which are not at issue in this case.[10] In relevant part, § 825.302(e) provides:

---

[10] The FMLA regulations define intermittent and reduced schedule leave:

Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason. A reduced leave schedule is a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday. A reduced leave schedule is a change in the employee's schedule for a period of time, normally from full-time to part-time.

29 C.F.R. § 825.202(a).

> [w]hen planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations, subject to the approval of the health care provider. Employees are ordinarily expected to consult with their employers prior to the scheduling of treatment in order to work out a treatment schedule which best suits the needs of both the employer and the employee.

This provision, however, only addresses "foreseeable FMLA leave." 29 C.F.R. § 825.302. The analogous regulation for unforeseeable leave does not include a reasonable planning requirement. *See id.* § 825.303. But Defendant has never claimed that Barger's need for FMLA leave was foreseeable. Indeed, its position favored the opposite—that she was not incapacitated long enough to be entitled to FMLA leave and that her tooth extraction was a non-FMLA routine dental procedure.

The issue, then, becomes whether Plaintiff's pre-shift scheduling of a tooth extraction that potentially resulted in FMLA leave, when prior absences put her in danger of being fired, constitutes a legitimate reason unrelated to the exercise of FMLA rights for termination. "An employee lawfully may be dismissed, preventing h[er] from exercising h[er] statutory rights to FMLA leave or reinstatement, but *only if the dismissal would have occurred regardless* of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401 (emphasis added) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). Defendant's argument that Plaintiff's scheduling of the extraction on a workday constituted "reckless action" that serves as an independent ground for termination, while creative, lacks merit. Regional bears the burden of initially establishing that the grounds for termination are unrelated to an employee's exercise of FMLA rights. *See Gostola v. Charter Commc'ns, LLC*, ___ F. Supp. 3d ___, 2014 WL 7204924, at *9 (E.D. Mich. 2014). Bare assertions, however, will not suffice. *Id.* If the reason Regional provides for Barger's termination is not unrelated to her FMLA leave, there is no need for her to rebut it. *Id.* The hospital points to no official policy against scheduling

elective procedures before the start of a shift. Likewise, it presents no evidence that any other employee had been fired for "reckless" scheduling of a medical procedure. Most damaging to its argument, however, is the fact that it repeatedly connects the planning of the extraction to Plaintiff's subsequent inability to work. Barger's procedure was a problem because she "was unable to come to work," "throwing her employer's schedule off and forcing her employer to scramble to find a replacement nurse." (D.E. 24 at 19–20.) Her absence, however, may have been covered by the FMLA. Therefore, this proffered justification for her discharge cannot be said to be unrelated to the exercise of FMLA rights, and Defendant is not entitled to summary judgment on this ground.[11]

## C.    FMLA Retaliation

FMLA claims under the retaliation or discrimination theory arise out of 29 U.S.C. § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *See also Seeger*, 681 F.3d at 282. A prima facie case for retaliation requires a "showing that (1) [the plaintiff] engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Murphy v. Ohio State Univ.*, 549 F. App'x 315, 320 (6th Cir. 2013) (quoting *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007)). Neither Regional nor Barger discussed a retaliation theory in their summary judgment filings, but the

---

[11] Additionally, the FMLA's rule "against interference prohibits . . . FMLA leave be[ing] counted under no fault attendance policies." 29 C.F.R. § 825.220(c). Regional has not claimed that Barger's termination was not under a no-fault termination policy, and the record shows that it may have been. Before the incidents at issue, Plaintiff was warned that *any* further absence could result in her termination, and, at her termination meeting, she was told that she "exceed[ed] the number of absences allowed by the [h]ospital in a 12-month period . . . ." (Pls.' Resp. to Def.'s Stat. of Asserted Material Facts ¶¶ 4–5, 37, D.E. 33.) As discussed earlier, there remains a genuine issue as to whether the FMLA covers Plaintiff's leave, so terminating her in part because of this absence may effectively be counting FMLA leave under a no-fault attendance policy in violation of § 825.220(c).

complaint made a general allegation of FMLA violations and stated that Regional's actions "constituted ongoing interference with protected rights under the FMLA and/or prohibited *discrimination* under the FMLA." (D.E. 1 ¶ 28) (emphasis added). Where a plaintiff's complaint provided a defendant with "sufficient notice that she was broadly alleging violations under 29 U.S.C. § 2615, and that her FMLA claim could encompass either the interference theory, the retaliation theory, or both theories," she does not waive her ability to proceed under either theory by failing to address it specifically in a response to a motion for summary judgment. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007); *see also Seeger*, 681 F.3d at 282 (reaffirming *Wysong*'s rationale). Regardless, courts may grant summary judgment on a retaliation claim if a plaintiff did not suffer a serious health condition or did not otherwise engage in a FMLA-protected activity. *See Family Dollar*, 320 F. App'x at 338. Here, however, a genuine issue remains as to whether Barger's illness was covered under FMLA, so summary judgment on her retaliation claim is not appropriate on this ground either.

## IV.   Conclusion

For the reasons stated above, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED this 13th day of March 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE